**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

HAROLD LAMPLEY,
Plaintiff,

Case No. 6:26-cv-03552-MDH

v.

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; and
EVERETT B. KELLEY, in his official capacity as National President of AFGE,
Defendants.

# FIRST AMENDED VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

Plaintiff Harold Lampley, proceeding pro se, files this First Amended Verified Complaint under Title I of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. §§ 411, 412, and 529, against the American Federation of Government Employees, AFL-CIO (AFGE National), and Everett B. Kelley in his official capacity as National President of AFGE. Plaintiff seeks emergency restoration and preservation of his pre-September 2, 2026 AFGE membership, elected-office status, representational functions, and candidate eligibility; declaratory and permanent equitable relief; damages according to proof; and taxable costs. Plaintiff alleges as follows:

## I. NATURE OF THE ACTION

This action arises from AFGE National's immediate enforcement of severe internal discipline against an elected Local officer after the disciplinary charge package itself had already become the subject of FLRA retaliation proceedings. Before AFGE imposed the challenged discipline, the FLRA Chicago Regional Office found sufficient evidence to issue complaints in CH-CO-25-0093 and CH-CO-25-0101 regarding the internal union charges and amended internal union charges against Plaintiff. The Region specifically identified the charge package as including allegations based on Plaintiff's filing of ULP charges, assisting others in filing ULP charges, and participating in the FLRA process; stated that disciplining or attempting to discipline a member for those protected activities violates 5 U.S.C. § 7116(b)(1); and advised that the proposed settlement would require rescission of the internal union charges, an agreement not to include ULP-based allegations in future internal charges, and a notice posting. Plaintiff therefore alleges that the internal and amended disciplinary charge package was materially tainted by retaliation for protected activity. Plaintiff further alleges that the disciplinary process failed to satisfy the full-and-fair-hearing safeguards guaranteed by Title I of the LMRDA and that federal law limits internal union discipline to conduct consistent with Chapter 71.

The emergency is now actual, not hypothetical. On September 2, 2026, National President Everett Kelley adopted Arbitrator Mark D. Keyl's August 21, 2026 decision and penalty "effective immediately." Within minutes, AFGE counsel forwarded the decision to the Local 2338 Executive Board, and Local President Kevin Ellis notified Department of Veterans Affairs personnel that Plaintiff had been immediately expelled for three years, barred from AFGE and affiliate functions for five years, and suspended from elected or appointed positions. That workplace dissemination does more than interfere with Plaintiff's professional and representational position; it places Plaintiff in a

materially negative light before his supervisors and chain of command by communicating serious, disputed disciplinary conclusions as presently effective before the internal appeal, this Court's review, or the related FLRA proceedings have been completed.

Plaintiff does not ask this Court to adjudicate the merits of CH-CO-25-0093 or CH-CO-25-0101 under Chapter 71, direct the FLRA how to rule, supervise the Local 2338 election, or retry the internal disciplinary case. Plaintiff invokes independent rights under the LMRDA. He relies on 5 U.S.C. § 7116, the Regional communications, and relevant FLRA precedent construing Chapter 71 only as context establishing the protected character of conduct incorporated into the discipline, the statutory limits asserted on AFGE's internal disciplinary authority, the retaliation issue, and the need for interim relief. Plaintiff seeks restoration of the last uncontested status preceding the September 2 decision while his LMRDA claims and related administrative review proceed.

Plaintiff also seeks narrowly tailored prospective relief limiting further official AFGE dissemination and electoral use of the challenged disciplinary findings while temporary relief is in effect. The requested relief is directed only to Defendants and persons legally bound by Federal Rule of Civil Procedure 65(d)(2); it does not purport to restrain private persons generally. Disclosures reasonably necessary for this Court, the NEC appeal, the FLRA, the Department of Labor, legal counsel, lawful process, and professional-disciplinary authorities remain permitted.

## II. JURISDICTION AND VENUE

**1.** This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under the LMRDA, including 29 U.S.C. §§ 411(a)(2), 411(a)(4), 411(a)(5), 412, and 529.

**2.** Section 102 of the LMRDA, 29 U.S.C. § 412, authorizes a person whose Title I rights have been infringed to bring a civil action in federal district court for appropriate relief, including injunctions.

**3.** Venue is proper in the Western District of Missouri under 29 U.S.C. § 412 because the alleged violations and their concrete consequences occurred and are continuing in Missouri, including loss of Plaintiff's Local 2338 office and membership status, interference with his Missouri representational relationships, dissemination to VA personnel, and threatened exclusion from the October 26, 2026 nomination process.

**4.** Divisional venue lies in the Southern Division under W.D. Mo. L.R. 3.2 because Plaintiff resides in Howell County, Missouri, and substantial consequences of the challenged action are experienced in the Southern Division.

## III. PARTIES

**5.** Plaintiff Harold Lampley resides in Howell County, Missouri. Before September 2, 2026, he was a dues-paying AFGE member in good standing and the membership-elected First Vice President of AFGE Local 2338. AFGE now purports to have expelled him from membership and suspended him from elected office effective immediately.

6. Defendant American Federation of Government Employees, AFL-CIO (AFGE National) is the national labor organization that invoked Article IX § 5(e), assumed control of the disciplinary process, and issued and disseminated the challenged final disciplinary decision through its National President and counsel.

7. Defendant Everett B. Kelley is the National President of AFGE. He is sued solely in his official union capacity for prospective declaratory and injunctive relief arising from his September 2, 2026 adoption and implementation of the challenged discipline. Plaintiff does not seek a personal monetary judgment against Kelley.

## IV. FACTUAL ALLEGATIONS

**8.** Plaintiff engaged in union speech, representation, reporting, and federal administrative activity concerning Local 2338 and Local President Kevin Ellis, including filing ULP charges, assisting bargaining-unit employees with ULP matters, and participating in FLRA processes.

**9.** Plaintiff also filed a complaint with the U.S. Department of Labor concerning Local 2338 and alleges that his reporting contributed to OLMS review. The August 21, 2025 OLMS Compliance Audit Program closing letter independently documented LM-3 reporting deficiencies: at least $29,215.25 in reimbursements to President Ellis were not reported in the required officer-disbursement category; at least $9,000 in arbitration reimbursements from AFGE National and Attorney Robert Smith were reported in the wrong receipts category; and Local 2338 inaccurately reported $5,000 in bond coverage when records showed $25,000 in blanket coverage through AFGE National. Plaintiff does not allege that DOL found embezzlement, misappropriation, or an actual lack of the $25,000 bond.

**10.** On August 19, 2024, an FLRA Chicago Senior Attorney informed Plaintiff and Ellis that the Chicago Regional Director had found that the Union, specifically Ellis in his capacity as President, committed an unfair labor practice by removing Plaintiff from the Labor Management Forum and reducing Plaintiff's official time by fifty percent in CH-CO-24-0425.

11. Internal Article XXIII charges and amended internal charges were pursued against Plaintiff. Those charge documents became the subject of CH-CO-25-0093 and CH-CO-25-0101, in which Plaintiff alleged that the disciplinary process was retaliation for his protected FLRA activity. The charge package included allegations expressly based upon or intertwined with Plaintiff's filing of ULP charges, assistance to others in filing charges, participation in FLRA proceedings, and communications with the Authority.

12. On February 19, 2025, FLRA Chicago Senior Attorney Brittany Copper advised Plaintiff and Ellis that the Region had found sufficient evidence to issue complaints in CH-CO-25-0093 and CH-CO-25-0101 "regarding the internal union charges and amended internal union charges against Harold Lampley." Copper stated that it is a § 7116(b)(1) violation for a union to discipline or attempt to discipline a member for filing ULP charges, assisting others in filing ULP charges, or participating in the FLRA's ULP process. Copper further conveyed that the Region's proposed settlement would require the Union to "rescind the internal union charges against Lampley," agree not to include charges involving ULPs in future internal union charges for anyone, and post a notice. Ellis responded that he was "not interested in any settlement." Plaintiff therefore alleges that the Region's sufficient-evidence determination encompassed the internal and amended disciplinary charge package as a whole, and treated that package as retaliatory discipline arising from Plaintiff's protected activity. Plaintiff further alleges that, once the Region found sufficient evidence to issue complaints on that retaliation theory and proposed rescission of the internal union charges, AFGE should have halted further prosecution and enforcement of the retaliatory charge package rather than continuing it to discipline Plaintiff.

13. On March 13, 2026, Plaintiff contacted FLRA counsel Michael A. Quintanilla regarding the pending unfair-labor-practice matters, including CH-CO-25-0093 and CH-CO-25-0101, and advised that the internal disciplinary proceeding threatened his AFGE membership and elected office. Plaintiff specifically sought emergency administrative protection, including temporary restraining relief, before the disciplinary process could produce those consequences.

14. Mr. Quintanilla advised Plaintiff that cases involving the Department of Veterans Affairs were then blocked pending resolution of federal court litigation concerning the legality of an Executive Order affecting coverage under the Federal Service Labor-Management Relations Statute.

15. Mr. Quintanilla further informed Plaintiff in writing: "We are unable to move forward with your case to include issuing a TRO."

16. The FLRA's inability to proceed was not communicated to Plaintiff as a determination that his unfair-labor-practice allegations lacked merit, had been withdrawn, had been adjudicated against him, or had otherwise reached final administrative disposition. Rather, Plaintiff was informed that the agency could not move the matters forward because of external litigation concerning the operative Executive Order.

17. Plaintiff therefore faced a procedural gap in which the federal statutory issues implicated by the internal charges remained unresolved while the administrative forum addressing those issues was unable to provide timely interim protection. Plaintiff relies on the March 13, 2026 communication to explain the absence of timely administrative injunctive relief, not to ask this Court to adjudicate the merits of the pending ULP matters or to exercise FLRA jurisdiction.

18. The Federal Service Labor-Management Relations Statute separately defines the statutory boundary for discipline imposed by a federal-sector labor organization. Under 5 U.S.C. § 7116(b)(1), it is an unfair labor practice for a labor organization to interfere with, restrain, or coerce an employee in the exercise of rights protected by Chapter 71.

19. Section 7116(b)(3) further prohibits a labor organization from coercing, disciplining, fining, or attempting to coerce a member as punishment or reprisal, or for the purpose of hindering or impeding the member's work performance or productivity as an employee or the discharge of the member's duties as an employee.

20. Congress also expressly limited internal union discipline in 5 U.S.C. § 7116(c), which preserves a labor organization's ability to enforce discipline under its constitution or bylaws only "to the extent consistent with the provisions of this chapter."

21. FLRA decisions have repeatedly applied those statutory limits to prohibit a union from threatening or disciplining a member for filing unfair-labor-practice charges, causing or assisting another employee to file such charges, or participating in the Authority's statutory process. See National Association of Government Employees, Local R5-66 & James A. Confer, Jr., 17 FLRA 796 (1985); American Federation of Government Employees, AFL-CIO, 29 FLRA 1359, 1363 (1987); American Federation of Government Employees, Local 1857, AFL-CIO, 44 FLRA 959, 966-68 (1992).

22. Those authorities are directly relevant here. Charges 3, 4, 6, 8, 9, 10, and 11, as described in the disciplinary record, expressly concerned Plaintiff's filing of ULP charges, assistance or encouragement to others in filing ULP charges, challenges to official-time actions through the FLRA process, filing a ULP concerning union records or minutes, and communications with FLRA personnel. At the same time, the February 19, 2025 Regional determination was directed to the internal union charges and amended internal union charges as a disciplinary package, and the proposed settlement called for rescission of the internal union charges rather than merely deletion of selected counts. Plaintiff alleges that the package was therefore materially tainted by retaliation for protected activity even where an individual allegation did not expressly mention the FLRA on its face.

23. Kelley's September 2, 2026 adoption converted the challenged charge package into immediately effective discipline: expulsion from membership, suspension from elected office, a multi-year bar from AFGE functions, and resulting impairment of candidate eligibility. The disciplinary result was then communicated to Department of Veterans Affairs personnel. Plaintiff alleges that implementation transformed the disputed protected-activity allegations into actual punishment and caused immediate representational, electoral, and workplace consequences relevant to 5 U.S.C. § 7116(b)(1), (3), and (c) and the cited FLRA decisions.

24. On July 24, 2025, National President Kelley invoked Article IX § 5(e) and determined that conditions within Local 2338 were such that a fair and impartial Local trial could not be conducted. Kelley prohibited further Local processing, stated that an independent arbitrator would be selected under Article IX § 5(f), and delegated to the Local only the selection of prosecutors.

25. Article IX § 5(f) prescribes a seven-name FMCS list, a first strike by the National Office, a second strike by the charged officer, alternating strikes until one name remains, and a National Office request for the list within ten days after intervention. Plaintiff repeatedly contended that this process was not followed.

26. AFGE's May 22, 2026 hearing notice stated that Local prosecutors Kevin Ellis and Jacob Jordan attempted to coordinate striking and, after claiming Plaintiff refused to participate, "unilaterally selected Arbitrator Mark D. Keyl."

27. FMCS correspondence dated January 16, 2026 stated: "The appointment letter has been rescinded no arbitrator is assigned to this case." Later FMCS communications referred to an arbitrator "selected by mistake" and asked whether Plaintiff agreed to the arbitrator proceeding. Plaintiff did not agree. Plaintiff contends that the rescission, his nonconsent, and the Article IX § 5(f) process deprived Keyl of authority under the prescribed selection mechanism. Plaintiff recognizes that AFGE disputes the legal effect of FMCS's action and does not ask this Court to treat the FMCS email itself as automatic vacatur.

28. Plaintiff filed a Motion to Dismiss, Motion for Summary Disposition, Motion to Suppress, and related prehearing submissions challenging authority, timing, evidence disclosure, retaliation, and federal statutory protections. He repeatedly requested reasoned rulings before the merits were adjudicated.

29. The Committee of Investigation expressly found no probable cause on Charges 2 and 5. Plaintiff's post-hearing brief argued that those charges therefore were not properly before the arbitrator. Keyl nevertheless sustained Charge 2, and Kelley later adopted the award in full. Plaintiff alleges that discipline was therefore imposed on a charge that had not completed the probable-cause process required by AFGE's governing documents.

30. Article XXIII § 1 required, as Plaintiff argued before and during the hearing, that the preferral notice include the evidence to be presented and stated that documents or evidence not supplied with the notice would not be allowed. Plaintiff moved to suppress evidence he contended had not been supplied. The hearing record later expanded from approximately twelve anticipated prosecution exhibits through approximately Exhibit 35.

31. The June 16, 2026 hearing recording reflects that Plaintiff renewed his threshold objections, attempted to present his opening statement but was interrupted and restricted in doing so, cross-examined prosecution witness Jacob Jordan at length, and repeatedly stated that his opening, questioning, and presentation of evidence were being curtailed before he ultimately ended his participation. AFGE nonetheless continued the hearing and rested after presenting testimony from Jordan and Ellis. Plaintiff contends that material portions of the testimony provided by Jordan and Ellis were inaccurate or inconsistent with contemporaneous documentary evidence and other portions of the record, matters that Plaintiff subsequently identified and preserved in his post-hearing submissions and request to reopen or correct the record.

32. Plaintiff further alleges that Keyl disclosed consultation with AFGE National personnel concerning contested procedural or governing-document issues. Plaintiff was not present for that consultation and alleges he was not given a meaningful opportunity to know and rebut the substance before the contested suppression ruling. Plaintiff seeks preservation and disclosure sufficient to determine the nature and effect of those communications.

33. On July 20, 2026, Plaintiff submitted a 156-page Post-Hearing Brief. The brief expressly preserved the disputed § 5(f) selection process, FMCS rescission, Article XXIII § 1 evidence-service issue, Charge 2 no-probable-cause problem, protected FLRA activity, alleged hearing restrictions, consultation with AFGE National staff, and the limited-reopening/correction issues. The brief asked that no charge be sustained and that Plaintiff's elected and membership status be preserved.

34. On August 27, 2026, before Kelley issued a National decision, Plaintiff wrote directly to Kelley, requested that the award be set aside, requested a meeting before Kelley acted, and transmitted fifteen supporting attachments including the dispositive motions, Motion to Suppress, Motion to Reopen, Post-Hearing Brief, and FLRA materials. Kelley did not grant Plaintiff the requested pre-decision meeting.

35. The August 21, 2026 Internal Disciplinary Trial Opinion and Award sustained Charges 1, 2, 3, 4, 6, 8, 9, 10, 11, 12, and 13; dismissed Charges 5 and 7; didn't make a ruling on Charges 14 or 15; recommended expulsion from AFGE membership for three years; recommended removal and a five-year bar from AFGE and affiliate functions; and recommended suspension from appointed or elected positions during appeal.

36. Immediately before the remedy, the award stated that Plaintiff "is not competent to continue in his current role as First Vice President and member of the AFGE." Plaintiff alleges that, even assuming Keyl had valid internal disciplinary authority, that authority extended did not authorize Keyl to determine "competency." In fact, being declared incompetent requires a guardian to be appointed in the state of Missouri. Plaintiff seeks to prevent Defendants from mischaracterizing or utilizing the term competency, or any variation."

37. On September 2, 2026, Kelley issued a written decision adopting Keyl's decision and penalty "effective immediately." The letter advised Plaintiff that he may appeal to the NEC by filing a written appeal with the National Secretary-Treasurer's Office within fifteen days after receipt.

38. Kelley's September 2 letter states that Keyl was selected "after you struck for him from a list of random arbitrators provided by FMCS." That account materially conflicts with AFGE's May 22 hearing notice, which stated that Ellis and Jordan "unilaterally selected" Keyl after Plaintiff allegedly refused to participate. Plaintiff alleges AFGE did not reconcile these inconsistent official descriptions before adopting the award.

39. Kelley's adoption letter states that Keyl acted after reviewing relevant oral and documentary materials, but the letter does not expressly address Plaintiff's preserved objections concerning the § 5(f) selection process, the FMCS rescission, Charge 2's no-probable-cause determination, the evidence-service issue, protected FLRA activity, the alleged consultation with National personnel, or Plaintiff's post-hearing correction submissions.

40. At approximately 9:29 a.m. on September 2, 2026, AFGE Associate General Counsel Sophia Ruff forwarded the National decision to the Local 2338 Executive Board "for your awareness."

41. At approximately 9:40 a.m. the same morning, Local 2338 President Kevin Ellis sent an email to Department of Veterans Affairs personnel with the subject "Lampley's Immediate Removal from AFGE!" stating that Plaintiff had been immediately expelled from AFGE membership for three years, removed and barred from AFGE and affiliate functions for five years, and suspended from appointed or elected positions. Plaintiff alleges that this communication carried the internal disciplinary result into his federal workplace and immediately impaired his representational standing before any NEC review could occur.

42. Local 2338 Bylaws § 16(h) schedule nominations for the fourth Monday of October and the primary election for the fourth Monday of November. In 2026 those dates are October 26 and November 23. Section 16(i) requires, among other qualifications, good standing and one year of AFGE Local

membership immediately preceding the close of nominations. Before September 2, 2026, Plaintiff satisfied those qualifications. The immediate expulsion now directly impairs his eligibility unless stayed or reversed before nominations.

43. AFGE's Constitution provides an internal appeal to the National Executive Council (NEC). Plaintiff is timely pursuing that internal remedy and will preserve proof of filing or transmission. Article XXIII § 8, however, provides that an adverse decision remains in effect pending final appeal. The internal appeal therefore does not itself restore Plaintiff's membership, elected office, representational status, or October nomination eligibility while review is pending.

## V. COUNT I - LMRDA § 101(a)(5): SAFEGUARDS AGAINST IMPROPER DISCIPLINARY ACTION

29 U.S.C. § 411(a)(5) prohibits a labor organization from fining, suspending, expelling, or otherwise disciplining a member unless the member is served with written specific charges, given reasonable time to prepare a defense, and afforded a full and fair hearing. Plaintiff incorporates the preceding allegations.

44. Plaintiff alleges that the combined selection-authority dispute, AFGE's materially inconsistent descriptions of how Keyl was selected, the FMCS rescission record, adjudication of Charge 2 despite the Committee's no-probable-cause determination, the disputed evidence-service process, the materially expanded evidentiary record, consultation with National personnel outside Plaintiff's participation, restrictions on Plaintiff's presentation, and the failure to address preserved corrective submissions deprived him of the full and fair hearing required by § 411(a)(5).

45. AFGE has now imposed the challenged discipline effective immediately and communicated it to the Local Executive Board and VA personnel, causing present rather than merely threatened harm.

46. Plaintiff is entitled to appropriate declaratory, temporary, preliminary, permanent, and monetary relief under 29 U.S.C. § 412.

## VI. COUNT II - LMRDA § 101(a)(4) AND § 609: PROTECTION FOR COURT AND ADMINISTRATIVE PROCEEDINGS

29 U.S.C. § 411(a)(4) protects a union member's right to institute an action in court or a proceeding before an administrative agency. Section 609, 29 U.S.C. § 529, prohibits discipline for exercising rights secured by the LMRDA. Plaintiff incorporates the preceding allegations.

47. The FLRA Chicago Regional Office independently found sufficient evidence to issue complaints in CH-CO-25-0093 and CH-CO-25-0101 regarding the internal union charges and amended internal union charges against Plaintiff. The February 19, 2025 Regional communication identified the charge package as including Plaintiff's filing of ULP charges, assistance to others in filing charges, and participation in the FLRA process; stated that discipline or attempted discipline for those protected activities violates § 7116(b)(1); and proposed rescission of the internal union charges. Plaintiff alleges that the Regional determination therefore addressed the disciplinary package as retaliatory and materially tainted the charge package as a whole, even where an individual allegation did not expressly reference the FLRA on its face.

48. Plaintiff alleges that AFGE's effective-immediate discipline, imposed in material part on a package containing protected resort to administrative processes, interferes with and retaliates against rights protected by § 411(a)(4), enforceable through §§ 412 and 529. The statutory limits reflected in 5 U.S.C. § 7116(b)(1), (3), and (c), and the FLRA precedents cited above, further establish the protected character of the underlying conduct, the limits on AFGE's asserted disciplinary authority, the retaliatory context, and the irreparable nature of immediate enforcement. Plaintiff does not plead § 7116 as an independent

private cause of action for this Court to adjudicate in the first instance. See Karahalios v. National Federation of Federal Employees, Local 1263, 489 U.S. 527, 532-37 (1989).

## VII. COUNT III - LMRDA § 101(a)(2): UNION SPEECH, ASSOCIATION, AND ELECTED-OFFICE RETALIATION

29 U.S.C. § 411(a)(2) protects union members' rights to assemble and express views, arguments, and opinions, subject to reasonable union rules. Plaintiff incorporates the preceding allegations.

49. Plaintiff alleges that protected criticism, reporting, and union advocacy formed part of the retaliatory sequence and that immediate removal of an elected officer shortly before nominations chills Plaintiff and members who selected him and materially alters the democratic process.

50. Plaintiff does not ask this Court to supervise Local 2338's election or invalidate an election. He seeks less intrusive Title I relief restoring and preserving his pre-September 2 status so the challenged discipline does not determine the candidate field before judicial and administrative review can occur.

## VIII. DAMAGES AND EQUITABLE RELIEF; NO JURY DEMAND

51. Plaintiff seeks actual and compensatory damages from AFGE National according to proof for injuries proximately caused by proven LMRDA violations, including proven loss of membership, representational, and union rights and proven consequential emotional or reputational injury; nominal damages; punitive damages to the extent legally available and supported by the required proof; and taxable costs.

52. Plaintiff does not demand a jury trial. Plaintiff requests that all equitable matters, including temporary, preliminary, declaratory, and permanent injunctive relief, be determined by the Court. Plaintiff preserves his claims for monetary relief according to proof.

## IX. INTERNAL REVIEW / EXHAUSTION

Plaintiff has timely invoked and is pursuing the written NEC appeal identified in AFGE's September 2, 2026 decision and will preserve proof of filing and transmission. He does not seek to bypass reasonable internal review. Article XXIII § 8, however, provides that an adverse decision remains in effect pending final appeal, while President Kelley's September 2 adoption expressly made the challenged discipline "effective immediately." The internal appeal therefore does not itself restore Plaintiff's AFGE membership, elected office, representational standing, October 26 nomination eligibility, or the professional standing affected by dissemination of the discipline to Department of Veterans Affairs officials. Plaintiff alleges that continued enforcement of Kelley's September 2 adoption authorizes and perpetuates discipline that is unlawful to the extent it punishes activity protected by federal law. Plaintiff is therefore pursuing the NEC appeal in parallel with this action, but does not seek to have the requested preliminary injunction terminate upon completion of the NEC appeal. Rather, Plaintiff requests that preliminary injunctive protection remain in effect through final administrative disposition of FLRA matters CH-CO-25-0093 and CH-CO-25-0101, including any consolidated, amended, remanded, reissued, or successor proceeding arising from the same disciplinary matters, unless this Court orders otherwise.

Section 101(a)(4) of the LMRDA protects a union member's right to institute an action in court or before an administrative agency and permits, at most, a discretionary requirement that the member pursue "reasonable hearing procedures" within the union for a period not exceeding four months. 29 U.S.C. § 411(a)(4). The Supreme Court has explained that this proviso is not a grant of additional disciplinary authority to unions, but a policy permitting public tribunals, in their discretion, to defer briefly while internal relief is pursued. NLRB v. Indus. Union of Marine & Shipbuilding Workers of Am., 391 U.S. 418, 426 (1968). The Eighth Circuit likewise treats intra-union exhaustion in LMRDA cases as discretionary and considers whether union hostility, inadequacy of the internal remedy, or

unreasonable delay would make exhaustion inappropriate. McPhetridge v. Local 53 IBEW, 578 F.3d 886, 891-92 (8th Cir. 2009) (applying the factors identified in Clayton v. Int'l Union, UAW, 451 U.S. 679, 689 (1981)). Here, the internal appeal is inadequate as an interim remedy because the challenged discipline remains effective during review and cannot prevent the ongoing loss of elected and representational status, the NEC is using the office of general counsel to assist (same individual who worked to provide guidance/counsel to the arbitrator), workplace harm, or the expiration of the October 26 nomination opportunity. Plaintiff therefore asks the Court to preserve the status quo while the NEC process proceeds and, after notice, to continue that protection through final FLRA administrative disposition or further order of this Court. The requested endpoint is the FLRA proceedings—not completion of the NEC appeal.

**X. PRAYER FOR RELIEF**

**1.** Declare that Defendants may not enforce discipline imposed in violation of Plaintiff's LMRDA rights;

**2.** Enter an immediate TRO staying the September 2, 2026 AFGE adoption decision and the August 21, 2026 award, and directing Defendants to treat Plaintiff, while the TRO remains in force, as holding the same AFGE membership, good-standing, elected-office, representational, and candidate-eligibility status he held immediately before September 2;

**3.** After notice, enter a preliminary injunction continuing that protection through final administrative disposition of FLRA matters CH-CO-25-0093 and CH-CO-25-0101 and any consolidated, amended, remanded, reissued, or successor proceeding arising from the same disciplinary matters, unless the Court orders otherwise;

**4.** Prohibit Defendants and persons legally bound under Rule 65(d)(2), while the injunction is in force, from using the challenged discipline to suspend, remove, expel, disqualify, restrict, or otherwise diminish Plaintiff's membership, elected office, representational functions, or eligibility to be nominated for, campaign for, seek, or hold Local 2338 office;

**5.** Order Defendants promptly to notify official recipients who were told the September 2 discipline was effective, including the Local 2338 Executive Board and known VA recipients of the September 2 implementation notice, that enforcement has been stayed by the Court and Plaintiff must be treated in his pre-decision status for the duration of the stay;

**6.** Enter narrowly tailored temporary non-dissemination and non-electoral-use relief prohibiting Defendants and persons legally bound by Rule 65(d)(2), acting in an official AFGE capacity, from further publishing, circulating, or otherwise disseminating the substance of the award or adoption decision to persons lacking a legitimate operational, legal, or appellate need for the information, and from using the challenged discipline for electoral purposes while the injunction remains in effect; provided that disclosures reasonably necessary for this Court, the NEC/internal appeal, the FLRA, the Department of Labor, counsel, lawful process, and professional-disciplinary authorities remain permitted;

**7.** Prohibit Defendants from representing Keyl's office-performance "competence" statement as a judicial, medical, mental-health, cognitive, or general legal competency adjudication;

**8.** Order preservation of the complete native disciplinary record and all records identifying dissemination or implementation of the award and September 2 decision, including Zoom/audio/video, chat, metadata, exhibits, motions, rulings, briefs, objections, appointment/FMCS records, communications, recipient lists, and transmittal metadata;

**9.** Award against AFGE National actual and compensatory damages according to proof, nominal damages, punitive damages to the extent legally available and proven, taxable costs including the filing fee and service costs to the extent recoverable, and such other relief as the Court deems just and proper;

Respectfully submitted,

Harold Lampley

Digitally signed by Harold Lampley
Date: 2026.09.04 16:31:34 -05'00'

Harold Lampley, Plaintiff, Pro Se
1705 Westway Dr., West Plains, MO 65775
Phone: (580) 823-0373 | Email: haroldlampley@gmail.com